Brian Mark ROHLIK,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. CX–86–1167.

Court of Appeals of Minnesota.

Feb. 17, 1987.
Review Denied April 17, 1987.

Brian L. White and Franta & White, Wabasso, for respondent.

Hubert H. Humphrey, III, Minnesota Atty. Gen. and Lawrence M. Schultz, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Respondent Brian Rohlik's driver's license was revoked for driving with an alcohol concentration over .10. The trial court rescinded the revocation. On appeal the Commissioner argues that the trial court erred in finding the alcohol concentration test must be administered within two hours of an accident, in finding the police officer had no probable cause to believe Rohlik drove while under the influence, and in finding that the police officer did not read

the implied consent advisory at the time he requested that Rohlik take the test. We reverse.

## FACTS

On the evening of November 16, 1985, the Redwood County Sheriff's office received a report of a personal injury accident on a highway outside of Vesta, Minnesota. When the officers arrived, the fire department was already on the scene. A vehicle was in the ditch and had been substantially destroyed by fire. While investigating the scene, the police officers also found some blood on the roadway.

A registration check indicated that the car was registered to James Rohlik. Bystanders indicated to the officers that one of the "Rohlik boys" had been driving the car and that he was at the Rohlik farm lying in bed. Officers Christensen and Coyour then proceeded to the Rohlik farm approximately a half mile down the road.

When the officers knocked on the door, an unidentified male answered the door and said he would direct the officers to the driver. The officers followed the man upstairs and found Rohlik lying on a bed. A medic was in the room and attending to Rohlik. Coyour asked Rohlik if he was okay and Rohlik said he did not know. Coyour asked Rohlik what had happened and Rohlik said he was driving home alone from Vesta when he lost control of the car and it went into the ditch. Rohlik said he walked home after the accident.

Officer Coyour said that Rohlik had no visible injuries. Coyour testified however that he observed that Rohlik's pupils were dilated, that his eyes were bloodshot and glassy, that he had a faint odor of alcohol on his breath, and that he swayed while putting on his pants. He said that Rohlik appeared intoxicated and confused. The medic attending Rohlik also stated that Rohlik had no visible injuries. She said that Rohlik just wanted to go back to sleep and when the officers repeatedly asked him to go to the hospital, he just turned his back on the officers.

Coyour and Rohlik's brother convinced Rohlik to go to the hospital for an examination. While helping Rohlik dress, Coyour noticed that he appeared to fall on two occasions. Coyour indicated in his offense report that he did not know if the imbalance was due to injury or intoxication. Coyour testified that at this time he did not tell Rohlik that he was under arrest or that he would be charged.

The officers drove Rohlik to the hospital, and Rohlik's brother accompanied them. Rohlik's brother said that on the drive to the hospital the officers asked Rohlik only general questions about the outdoors and hunting. Rohlik told the officers that he had been at a wedding dance and had had too much to drink.

On the way to the hospital, the officers stopped at the Law Enforcement Center for a blood test kit. Once at the hospital, Officer Coyour requested that Rohlik submit to a blood alcohol test and Rohlik complied. The results of that test showed that Rohlik had an alcohol concentration of .17. Based on these results, the Commissioner issued an order of revocation.

## ISSUE

Did the trial court err when it rescinded the revocation of Rohlik's driver's license?

## ANALYSIS

### I.

Minn.Stat. § 169.121, subd. 1 provides that:

It is a misdemeanor for any person to drive, operate or be in physical control of any motor vehicle * * *:

(a) when the person is under the influence of alcohol;

(b) when the person is under the influence of a controlled substance;

(c) when the person is under the influence of a combination of any two or more of the elements named in clauses (a) and (b);

(d) when the person's alcohol concentration is 0.10 or more; or

(e) when the person's alcohol concentration as measured within two hours of the time of driving is 0.10 or more.

The implied consent statute, Minn.Stat. § 169.123, subd. 2(a), pursuant to which respondent's license was revoked, provides in pertinent part:

[A] test may be required of a person when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121 and * * * the person has been involved in a motor vehicle accident or collision resulting in property damage * * *.

The trial court stated in the memorandum accompanying its order rescinding revocation of respondent's license that because "the test was not administered within the two hour period, no offense was committed." In making this determination, the trial court apparently concluded that the first condition of section 169.123, subd. 2(a) (that there be probable cause to believe section 169.121 had been violated) could not be met. We cannot agree. Section 169.121, subd. 1(e) is but one means by which a driver may violate that section. The other four means contain no temporal limitations.[1]

■ Failure to administer a test to respondent within two hours of driving did not prevent the officer from having probable cause to believe that respondent had violated section 169.121. The officer observed respondent's glassy, bloodshot eyes, smelled a faint odor of alcohol as respondent lay in bed, and observed respondent sway while dressing.

■ Further, in regard to the issue of testing, the scope of the hearing conducted by the trial court was limited to inquiry into whether a "test was taken and the test results indicated an alcohol concentration of .10 or more *at the time of testing* * *."

(Emphasis added). Minn.Stat. § 169.123, subd. 6(3)(b). There is no requirement in subd. 6 that the test be conducted within two hours of driving. The trial court erred in expanding the scope of inquiry to include that requirement.

### II.

Relying on this court's decision in *Eggersgluss v. Commissioner of Public Safety*, 387 N.W.2d 892 (Minn.Ct.App.1986), the trial court found that the circumstances did not give the officer probable cause to believe Rohlik had violated Minn.Stat. § 169.121. In *Eggersgluss*, this court ruled that where the police officer did not observe the operation of the vehicle by the suspect, the officer must have other information "reasonably linking the observed intoxication with the suspect's earlier operation of a motor vehicle before probable cause to arrest will be established." *Id.* at 894.

Subsequent to the trial court's decision, the Minnesota Supreme Court issued *Eggersgluss v. Commissioner of Public Safety*, 393 N.W.2d 183 (Minn.1986), which determined that the facts of that case did provide a basis for probable cause. The supreme court found sufficient grounds for probable cause based on the police officer's observations that the driver's breath had the odor of alcohol, his eyes were watery, his face was flushed and that a passenger had told the police officer that the driver had been drinking. Also, the driver failed to negotiate a simple turn in the road at 4:30 a.m. The supreme court noted that the police officer's failure to ascertain the driver's activities between the time of the accident and the arrest did not negate a finding of probable cause. The court reasoned that people usually do not leave the scene of an accident and go drinking. Further, if someone had been drinking after an accident they would indicate that fact to

---

1. The trial court's reliance on *Eggersgluss v. Commissioner of Public Safety*, 387 N.W.2d 892 (Minn.Ct.App.1986), may have caused it to conclude that subds. 1(a)-(d) were not applicable. This case was, however, overruled by *Eggersgluss v. Commissioner of Public Safety*, 393 N.W.2d 183 (Minn.1986). *See also* Minn.Stat. § 169.121, subd. 2 which provides that results of tests "obtained more than two hours after the alleged violation" may be received into evidence at trial.

the police officer, and the driver had not made any such indication.

 The facts in the present case are also sufficient to give the police officer probable cause to believe Rohlik had been driving while under the influence in violation of Minn.Stat. § 169.121. Rohlik told the officers he had been driving the car, and the officer observed the indicia of intoxication. Rohlik had been in a car accident that resulted in substantial damage to his car and yet he simply walked home and went to bed. Finally, Rohlik gave no indication to the police officer that he had been drinking after the accident. The fact that the police officer did not specifically inquire about Rohlik's activities after the accident is not fatal to a finding of probable cause. *See Eggersgluss*, 393 N.W.2d at 185.

### III.

A third basis the trial court gave for rescinding the revocation was that the police officer did not read the implied consent advisory at the time he requested Rohlik take the test. The trial court found that the only reason the officer asked Rohlik to go to the hospital was to administer an alcohol test; therefore, the request occurred before Rohlik was transported to the hospital and the implied consent advisory should have been given at that time.

 We disagree. There is no requirement that the advisory be given at the time the police officer first forms the belief that a driver may be under the influence. The police officer in this case was under no obligation to give Rohlik the implied consent advisory before transporting him to the hospital where he actually requested Rohlik take the test.

The record shows that Rohlik had been involved in an accident and appeared groggy, confused and disoriented. In these circumstances the police officer's concern for Rohlik's medical condition was warranted and his request to take him to the hospital was reasonable. Rohlik underwent both assessment of his physical condition and the alcohol concentration test. While the better practice would have been for the officer to advise Rohlik before transporting him that he also intended to administer the test, the failure to do so does not invalidate the test results.

### IV.

Rohlik attempts to argue that the police officers' entry into his home was unconstitutional and therefore the statements he made to the officers should be suppressed. However, Rohlik did not file a notice of review as required by Minn.R.Civ.App.P. 106, and, therefore, we will not rule on the issue.

### DECISION

The police officer properly requested Rohlik submit to chemical testing in connection with his involvement in an auto accident resulting in property damage, and the revocation of Rohlik's driver's license was valid.

Reversed.